FILED
2014 AUG 26 PM 3:10

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**PEDRO TORRES-COLON,**

**Plaintiff,**

vs. **Case No.:** 6:14CV 1385-ORL-37GJK

**UNITED STATES OF AMERICA,**
**DEPARTMENT OF VETERANS**
**AFFAIRS,**

**Defendant.**
_____________________________________/

**COMPLAINT FOR DAMAGES UNDER THE FEDERAL TORT CLAIMS ACT**

**AND THE PRIVACY ACT OF 1974**

**COMES NOW**, the Plaintiff, Pedro Torres-Colon, and sues Defendant, the United States of America, Department of Veterans Affairs, and files this, his Complaint for Damages Under the Federal Tort Claims Act and the Privacy Act of 1974, and states:

## GENERAL ALLEGATIONS

### A. Parties

1. At all times relevant to this Complaint, Plaintiff, Pedro Torres-Colon ("Mr. Torres"), was a resident of either Orange County, Florida, or Brevard County, Florida, and was a patient of Orlando Veterans Affairs (VA) Medical Center at its Orlando, Florida, and

Viera, Florida, locations. Mr. Torres currently resides in Satellite Beach, Brevard County, Florida.

2. At all times relevant to this Complaint, Orlando VA Medical Center ("Orlando VAMC") was a hospital and medical facility with its primary place of business located at 5201 Raymond Street, Orlando, Orange County, Florida 32803. Orlando VAMC is owned and operated by the United States Department of Veterans Affairs ("VA"), a federal government agency.

3. The United States of America is liable for the actions of its employees and agencies and, thus, is the proper defendant in this action. 28 U.S.C. § 2679.

## B. Jurisdiction and Venue

4. This action arises under the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq., and the Privacy Act of 1974, 5 U.S.C. § 552a. The United States District Court has original jurisdiction of this matter pursuant to 28 U.S.C. § 1346(b)(1), 5 U.S.C. § 552a(g)(1), 5 U.S.C. § 552a(4)(B), and 28 U.S.C. § 1331.

5. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1346(b)(1) and 28 U.S.C. § 1391, because all actions and events relevant to this Complaint occurred in Orange County, Florida, within the Middle District of Florida. Venue is also proper pursuant to 5 U.S.C. § 552a(g)(5), because the agency records are situated in Orange

County, Florida, within the Middle District of Florida, and the Plaintiff resides within the Middle District of Florida.

### C. Conditions Precedent

6. Mr. Torres has fully complied with all conditions precedent to filing suit pursuant to the Federal Tort Claims Act, specifically 28 U.S.C. § 2675. For all counts and causes of action falling under the Federal Tort Claims Act, Mr. Torres timely served his Federal Tort Claims on the U.S. Department of Veterans Affairs using a Standard Form (SF) 95 and attachments. The U.S. Department of Veterans Affairs denied Mr. Torres's administrative tort claims by letter dated March 3, 2014. Exhibit "1."

7. All other conditions precedent to this action have been performed, have occurred, or have been waived.

## ADDITIONAL ALLEGATIONS COMMON AS TO ALL COUNTS

### A. Background Facts Giving Rise to Claims

8. Mr. Torres was a member of the United States Air Force from 1998 until 2006. A service-related injury left Mr. Torres fifty percent (50%) disabled and entitled to medical treatment from the VA.

9. After Mr. Torres's discharge from the Air Force, he was treated at VA hospitals and clinics for his service-connected disability.

10. Mr. Torres is married and has four (4) children he supports.

11. During 2011, Mr. Torres was receiving treatment for his disabling injuries at the VA Outpatient Clinic in Viera, Florida ("Viera OPC"), a branch of the Orlando VA Medical Center ("VAMC").

12. Ricardo Pena, M.D., was Mr. Torres's treating physician at the time of his treatment at Viera OPC. Dr. Pena legitimately prescribed a course of medication to Mr. Torres, including opiates, to assist with managing the pain associated with Mr. Torres's service-connected injuries.

### B. Mr. Torres's Educational Program and and Work-Study Program

13. Some time in 2011, Mr. Torres applied for admission and was accepted to Valencia College in Orlando, Florida, where he was pursuing an Associate Degree in Healthcare Administration.

14. Mr. Torres planned to attend Valencia College for two (2) years, then transfer to the University of Central Florida to complete his Bachelor Degree and major in Healthcare Administration.

15. In January 2012, Mr. Torres was enrolled in classes at Valencia College and was living in or near Melbourne, Florida.

16. As a veteran and a Valencia College student, Mr. Torres was offered the opportunity to participate in the VA's work-study program. He agreed to participate in the

work-study program and signed a contract that was effective from January 2012 through June 2012.

17. Pursuant to the work-study contract, Mr. Torres was obligated to work no less than four hundred ninety-three (493) hours during the contract term, for which he was paid the rate of seven dollars and sixty-seven cents ($7.67) per hour. The total work-study salary for Mr. Torres for the period January 2012 through June 2012 was $3,781.31.

18. Mr. Torres was originally assigned to the Viera OPC for work-study employment. Mr. Torres continued to work there until he moved to Orlando, Florida, in May 2012 with his wife and four (4) children.

19. Upon arriving in Orlando, Mr. Torres's the VA and his work-study program transferred his employment to the Orlando VAMC.

20. While employed at the Orlando VAMC, Mr. Torres was assigned the title of Medical Support Assistant and worked approximately twenty-five (25) hours per week in the Family Medicine Department. Mr. Torres worked the entire period of his work-study contract, from January 2012 through June 2012, with no issues or disciplinary action of any kind.

21. Mr. Torres was eligible to renew his work-study contract in June 2012 because he was enrolled in summer classes at Valencia College. His work-study contract was renewed by the VA to cover the time period from June 2012 through August 30, 2012. Mr. Torres

worked the entire term of this work-study contract with no issues or disciplinary action of any kind.

22. On September 11, 2012, Mr. Torres signed a third work-study contract to cover the fall semester. The period of this contract was August 31, 2012, through January 15, 2013. The third work-study contract contained the same minimum hour requirements and hourly wage rate as the initial contract. Exhibit "2."

23. Mr. Torres fully expected that his work-study contract with the VA would be renewed every semester while he was in school, until he graduated with a four (4) year degree, at which time he would then become a full time VA employee. Had his employment not been terminated as stated herein, this would have occurred.

**C. <u>Mr. Torres's Medical Treatment at Orlando VAMC</u>**

24. Some time in mid-August 2012, Mr. Torres contacted the VA and requested that a new physician in Orlando be assigned to him so that he could continue the follow-up treatment of his injuries at the Orlando site of Orlando VAMC, instead of the Viera OPC.

25. Deborah Zaborsky, M.D., a VA employee, was assigned to provide medical treatment to Mr. Torres as a patient at the Orlando VAMC. Dr. Zaborsky became Mr. Torres's treating physician. Dr. Zaborsky was also a primary care physician assigned to the same department in which Mr. Torres performed his work-study duties at the VAMC.

26. After consulting with Dr. Zaborsky on August 28, 2012, Dr. Zaborsky instructed Mr. Torres that he must submit to a urinalysis drug test ("UA drug test") before she would continue his prescriptions for the medications that Dr. Pena had been prescribing for him. Mr. Torres submitted a urine sample for testing at 12:37 P.M. that day as part of his medical care.

27. Dr. Zaborsky informed Mr. Torres that the UA drug test was positive for opiates (for which he had a legitimate prescription from Dr. Pena) and alcohol metabolites.[1] Because of the results of the UA drug test, Dr. Zaborsky refused to write Mr. Torres a refill prescription for his required pain medications.

28. Mr. Torres explained that the results must have been a "false positive" for the alcohol metabolites because he had not drunk any alcoholic beverages. He requested another UA drug test and gave a second urine sample at 4:20 P.M. the same day.

29. The second UA drug test that same day showed no alcohol metabolites.

30. Despite these results, Dr. Zaborsky still refused to write a refill prescription for Mr. Torres's pain medication.

---

[1] Urine tests which test for the metabolites of alcohol do not detect actual alcohol in the individual's system. They may detect the metabolites of alcohol consumption that remain in a person's system even though that individual has not consumed anything containing alcohol for several weeks. Additionally, it is recognized that alcohol-based hand sanitizers and over-the-counter medications such as cough syrup may cause a urinalysis test to be positive for the metabolites of alcohol.

31. After Dr. Zaborsky's refusal, Mr. Torres requested that a different physician be assigned to treat him by the VA. Another physician on Dr. Zaborsky's team, Vicki Hubbard, M.D., a VA employee, was assigned to treat him.

32. On September 11, 2012, Mr. Torres was informed that he would be assigned to another team of VA physicians, and no longer would see Dr. Hubbard.

**D. <u>Unauthorized Release and Use of Mr. Torres's Private Medical Information by the VA</u>**

33. On or about September 11, 2012, Mr. Torres spoke to his VA work-study supervisor, Martin Butler, a VA employee.

34. During their conversation, Mr. Butler informed Mr. Torres that sometime between August 28, 2012, and September 11, 2012, Dr. Zaborsky had disclosed the results of Mr. Torres's UA drug test to Mr. Butler. This was the first notice which Mr. Torres had that his private medical information had been disclosed to his work supervisor.

35. During their conversation, Mr. Butler had a hostile and accusatory attitude and tone of voice and was openly hostile to Mr. Torres. He questioned Mr. Torres about the results of his UA drug test, showing that he had actual knowledge of the test results.

36. On September 13, 2012, Mr. Torres was informed by a representative from the Orlando VAMC Human Resources Department that his work-study contract had been terminated because of the positive UA drug test that Dr. Zaborsky had required him to submit

to for medical purposes. Mr. Torres was also informed that he was banned from the premises of the VAMC.

37. On September 16, 2012, Mr. Torres received a letter from Timothy W. Leizert, Medical Center Director, Orlando VAMC. Exhibit "3." In this letter, the Orlando VAMC admitted that Mr. Torres's medical information was "disclosed to [his] supervisor without [his] consent." Exhibit "3."

38. In a follow-up letter dated October 10, 2012, Mr. Liezert informed Mr. Torres that the Privacy Officer at the Orlando VAMC had found that Mr. Torres's health information was disclosed without his authorization. Exhibit "4."

39. Mr. Torres has also filed a claim about the breach of his right to the confidentiality of his medical records with the U.S. Department of Health & Human Services Office for Civil Rights. He has been informed that the investigation into his claim is ongoing, and that it is part of a nationwide investigation of similar claims against VA hospitals.

## E. Florida Substantive Law on the Right of a Patient to Confidentiality and Privacy of His Medical Record and Medical Information

40. Under the Federal Tort Claims Act, the substantive law of the state where the tortious conduct occurred is applied. 28 U.S.C. § 1346(b), 28 U.S.C. § 2674. In the present case, the substantive law of the state of Florida applies.

41. There is a separate and independent duty that all health care providers, licensed and unlicensed, whether an individual or a facility, have to protect and safeguard the medical information and other private information that they may receive from a patient or on a patient.

42. The substantive law of Florida has long recognized the right of a patient to the privacy and confidentiality of his medical records and medical information. Among other sources, these rights are acknowledged in Florida Dept. of Corrections v. Abril, 969 So. 2d 201 (Fla. 2007), in which the Florida Supreme Court states:

> . . . Florida has a long tradition of recognizing the privacy interests of patients in confidential medical records. See, e.g., State v. Johnson, 814 So. 2d 390, 393 (Fla. 2002) ("A patient's medical records enjoy a confidential status by virtue of the right to privacy contained in the Florida Constitution, and any attempt on the part of the government to obtain such records must first meet constitutional muster.") . . .
>
> Further, as is evidenced by our decision in Johnson, this Court has consistently and rigorously enforced the rights of patients to confidentiality in their medical records.

Abril, 969 So. 2d at 206. The sources for the patient's right to the privacy and confidentiality of his medical records and medical information will be discussed further below.

43. Likewise, federal law, which also applies in Florida and constitutes part of the substantive law of Florida, recognizes the right of an individual to the confidentiality and privacy of his medical information, especially drug testing information.

44. Physicians such as Deborah Zaborsky, M.D., have a duty under the substantive law of Florida to safeguard and not disclose their patients' confidential medical information to others.

45. As an employee of the VA, a federal government agency, not only are the VA and the U.S. vicariously liable for Dr. Zaborsky's acts, they stand in her shoes for liability purposes, and are vicariously liable for her negligence.

46. Hospital administrative staff, such as Martin Burke, have a duty under the substantive law of Florida to not violate the privacy and confidentiality of their employees, such as Mr. Torres, by accessing, obtaining, using and disclosing their confidential medical information for non-medical purposes.

47. As an employee of the VA, a federal government agency, not only are the VA and the U.S. vicariously liable for Mr. Burke's acts, they stand in his shoes for liability purposes.

48. Orlando VAMC is a hospital.

49. Hospitals, such as Orlando VAMC have a duty under the substantive law of Florida to safeguard and not disclose their patients' confidential medical information to others or to access it and use it for other than medical purposes.

F. Negligent Acts and Omissions on the Part of the VA and Its Employees

50. Orlando VAMC is a facility that is operated by the VA, a federal agency. All employees of Orlando VAMC and the VA are federal employees, including Dr. Zaborsky and Mr. Butler.

51. Dr. Zaborsky, an Orlando VAMC employee, improperly released Mr. Torres's private and protected confidential medical information to Mr. Butler without Mr. Torres's knowledge or consent. Mr. Butler used this information to terminate Mr. Torres, a disabled veteran, and have him banned from the premises of the VA medical center

52. Mr. Torres suffered injury as a direct result of the wrongful release of his private medical information by Dr. Zaborsky.

53. Orlando VAMC and the VA are responsible for the actions of Dr. Zaborsky, the employee who improperly released Mr. Torres's records, and Mr. Butler, the employee who received the information and used it for non-medical purposes.

54. Under the Federal Tort Claims Act, the Defendant is liable for the actions of federal employees while acting within the scope of their employment with a federal agency.

55. Mr. Torres would have a cause of action against the United States and the VA under Florida law if they were private persons that committed such acts that violated Mr. Torres's privacy and caused him injury.

### G. Damages Suffered by Mr. Torres

56. In order to transfer credit for the eight (8) years which Mr. Torres spent in the Air Force over to his tenure as a civilian employee of the VA, Mr. Torres paid approximately $3,000.00. Had Mr. Torres's employment with the VA not been terminated, he would have received at least the credit for his eight years of prior service with the Air Force, giving him eight years of seniority for pay and promotion purposes.

57. As a result of the wrongful acts of the VA, Mr. Torres will no longer be able to benefit from this transfer of tenure since he is no longer able to achieve his goal of becoming a VA employee in the field of Healthcare Administration.

58. In addition, the VA would have paid off at least one-half of Mr. Torres's total student loan amount if he continued to work for the VA.

59. While enroled at Valencia, Mr. Torres borrowed $5,000.00 per semester in student loans and would have continued to borrow that amount until he graduated. Had his employment with the VA not eben terminated, the VA would have repaid $2,500.00 for each semester of Mr. Torres's college education.

60. Mr. Torres paid out-of-pocket tuition in the amount of $3,000.00 for the Fall 2012 semester.

61. Mr. Torres was forced to withdraw from classes in the Fall 2012 semester due to depression caused by Dr. Zaborsky's wrongful disclosure of Mr. Torres's protected health information.

62. At the time Mr. Torres withdrew from classes, it was too late to receive a tuition refund, and he was forced to forfeit the tuition he paid for the Fall 2012 semester.

63. Mr. Torres had earned $3,781.31 per semester in the work-study program. This income was lost to Mr. Torres.

64. But for Dr. Zaborsky's wrongful disclosure of Mr. Torres's protected health information, Mr. Torres would have continued to participate in the VA's work-study program.

65. Upon completion of his Bachelor's degree, Mr. Torres would have worked at the VA in the field of Healthcare Administration.

66. At a minimum, Mr. Torres would have started employment with the VA as a GS-5 rank with at least eight years seniority. Mr. Torres's starting annual salary would have been at least $27,431.00, pursuant to the U.S. Office of Personnel Management 2012 Salary Tables.

67. Mr. Torres would have proceeded through the steps of the GS-5 rank and received pay raises accordingly during his employment with the VA.

68. Mr. Torres will not receive the salary he would have received had he been able to work as a VA employee upon graduation.

69. Had the VA not terminated his employment, Mr. Torres would have started his full time career with the VA at age 40. With the seniority he would have, he would have had to work a minimum of 22 years in order to be eligible for maximum retirement benefits. He lost these benefits as a result of the VA's actions.

70. The Federal Employee Retirement System pays a retirement annuity based on length of service and an individual's highest average basic pay earned during any three consecutive years of service.

71. Since Mr. Torres is now ineligible to become a VA employee, he will no longer be able to enjoy the federal employee retirement benefits to which he would otherwise be entitled.

72. In addition to the foregoing, Mr. Torres has also suffered the following special damages as a result of the unauthorized disclosure of his protected health information:

a. Loss of his job;

b. Loss of educational opportunities;

c. Loss of ability to re-enter a work-study program with the VA;

d. Loss of preferential treatment for job selection with the VA in Healthcare Administration;

e. Loss of future job opportunities;

f. Loss of his ability to support his wife and four (4) children;

g. Emotional distress and embarrassment; and

h. Pain and mental anguish.

## COUNT I

## NEGLIGENCE

### A. General Allegations for Count I

73. This Count is for damages under the Federal Tort Claims Act for negligence within the jurisdiction of this Court.

74. This Count is pleaded in the alternative and in addition to the other causes of action stated herein.

75. Mr. Torres incorporates for this Count the allegations contained in Paragraphs 1 through 72 above as if set forth fully herein.

76. Mr. Torres was not the cause, in part or in whole, of his injury.

77. Defendant is not immune from liability for the negligent act or acts of its employee(s) committed toward Mr. Torres.

### B. Duties Owed To Mr. Torres by Defendant: Physician's Duty to Protect the Confidentiality and Privacy of Patient Information Under Florida Substantive Law

78. The duties of a physician, such as Deborah Zaborsky, M.D., under the substantive law of Florida to safeguard and not disclose a patient's confidential medical information to others come from and are shown by, federal statutes, Federal Regulations, state laws, ethical standards and professional guidelines applicable to physicians, such as the American Medical Association's (AMA's) Code of Medical Ethics, as well as applicable common law.

**1. Federal Statutes and Federal Regulations Giving Rise to or Evidencing a Duty for VA Physicians Under Florida Law**

79. Mr. Torres's medical information was part of a federal system of records as defined by the Privacy Act of 1974.

80. The Privacy Act of 1974 provides a civil cause of action against an agency for failing to comply with any other provision of the Section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual. 5 U.S.C. § 552a(g)(1)(D).

81. The Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Public Law Number 104-191, is a federal law, passed by Congress, that adopts standards for healthcare practitioners as to patient confidentiality. Section 1177(a)(3) of HIPAA, codified at 42 U.S.C. § 1320d-6(a)(3), makes it an offense if any healthcare provider "discloses individually-identifiable health information to another person . . . ."

82. The HIPAA Privacy Rule is a Federal Regulation, enacted pursuant to HIPAA. The Privacy Rule and its amendments can be found at 45 C.F.R. Part 160 and Subparts A and E of Part 164.

a. The Privacy Rule protects against unauthorized disclosure of all "individually-identifiable health information" held or transmitted by a covered entity in any form or media, whether electronic, paper or oral. The HIPAA Privacy Rule defines this information as "protected health information" (or "PHI"). 45 C.F.R. § 160.103.

b. Dr. Zaborsky is a "covered entity" pursuant to 45 C.F.R. § 160.103.

c. The HIPAA Privacy Rule is applicable to Dr. Zaborsky pursuant to 45 C.F.R. § 160.102.

d. Pursuant to the HIPAA Privacy Rule, a covered entity is required to limit the disclosure and use of PHI to the "minimum necessary." A covered entity must make reasonable efforts to use, disclose, and request only the minimum amount of PHI needed to accomplish the intended purpose of the use, disclosure, or request. A covered entity must develop and implement policies and procedures to reasonably limit uses and disclosures to the minimum necessary. 45 C.F.R. §§ 164.502(a) and (b)(1) and 45 C.F.R. §§ 164.514(d)(3)(i) and (ii).

83. The Veterans Health Administration has issued VHA Handbook 1605.1, "Privacy and Release of Information," which has the force and effect of a Federal Regulation on VA physicians such as Dr. Zaborsky and VA facilities such as VAMC Orlando. It was in effect at all times relevant to this case.

84. VHA Handbook 1605.1, Paragraph 1, states that it:

> establishes guidance on privacy practices and provides procedures for the use and disclosure of individually-identifiable information [and] covers the responsibilities and requirements for compliance with all federal confidentiality and privacy laws and regulations.

VHA Handbook 1605.1, Para. 1. This Handbook has the force and effect of a Federal Regulation.

85. Pursuant to VHA Handbook 1605.1, Paragraph 3c(3), information from VHA records may only be disclosed with the prior signed authorization of the patient. This VA Handbook has the force and effect of a Federal Regulation. Mr. Torres signed no such authorization.

86. Additionally, the disclosure of individually-identifiable health information within the VA for purposes other than treatment, payment, or health care operations, without prior written authorization, requires specific other authority outlined in the Handbook. VHA Handbook 1605.1, Para. 12b(2)(c). None of the specific other authorities outlined in the Handbook are applicable to or justify the improper disclosure of Mr. Torres's UA drug test results by his treating physician, Dr. Zaborsky, to Mr. Torres's work-study supervisor, Mr. Butler.

87. The VA has also issued VHA Handbook 1605.03 which also has the force and effect of a Federal Regulation on VA facilities and physicians such as Dr. Zaborsky working in a VA facility. It was also in effect at all times relevant to this case.

88. VHA Handbook 1605.03, Para. 18b, states:

> **Disclosures.** VHA health care facilities can only disclose individually-identifiable information in accordance with applicable Federal laws and regulations and VHA Handbook 1605.1. . . .

89. Both VHA Handbook 1605.1 and VHA Handbook 1605.03 are binding on both VA facilities and their employees, including physicians such as Dr. Zaborsky.

90. VAMC Orlando failed to follow mandatory VHA policies and procedures when Dr. Zaborsky disclosed Mr. Torres's UA drug test results without legal authority.

### 2. State Statutes Giving Rise to or Evidencing a Duty for Physicians Under Florida Law

91. Article 1, Section 25, of the Florida Constitution, guarantees individuals the right to privacy and confidentiality. Court cases have construed this to include a right to privacy and confidentiality of medical information and records.

92. The Florida Patient's Bill of Rights and Responsibilities, Section 381.026(4), Florida Statutes,[2] provides:

> (4) RIGHTS OF PATIENTS.—Each health care facility or provider shall observe the following standards:
>
> (a) Individual dignity.—
>
> 1. The individual dignity of a patient must be respected at all times and upon all occasions.
>
> 2. Every patient who is provided health care services retains certain rights to privacy, which must be respected without regard

[2] Section 381.026(3), Florida Statutes, states in part:

> . . . . It is a public policy of the state that the interests of patients be recognized in a patient's bill of rights and responsibilities and that a health care facility or health care provider may not require a patient to waive his or her rights as a condition of treatment. This section shall not be used for any purpose in any civil or administrative action and neither expands nor limits any rights or remedies provided under any other law.

> to the patient's economic status or source of payment for his or her care. The patient's rights to privacy must be respected to the extent consistent with providing adequate medical care to the patient and with the efficient administration of the health care facility or provider's office. However, this subparagraph does not preclude necessary and discreet discussion of a patient's case or examination by appropriate medical personnel.

93. Section 456.057(7), Florida Statutes, prohibits a physician who generates a medical record on a patient from discussing a patient's medical condition with any person other than the patient or the patient's legal representative or other health care practitioners and providers involved in the care or treatment of the patient, except upon written authorization of the patient.

94. Dr. Zaborsky generated a medical record after a physical examination of Mr. Torres. Therefore, Dr. Zaborsky was prohibited from discussing Mr. Torres's medical condition with others without his authorization pursuant to Section 456.057(7), Florida Statutes.

### 3. Ethical Standards and Professional Guidelines (Industry Standards) Giving Rise to or Evidencing a Duty for Physicians under Florida Law

95. The Principles and Opinions contained in the AMA's Code of Medical Ethics also gives rise to the requirement that a physician protect the confidentiality of a patient's medical information and not disclose it to others.

96. Federal Courts have recognized the Principles of Medical Ethics of the AMA and the Opinions interpreting them as reflecting standards of the medical profession. See Ferguson v. City of Charleston, 532 U.S. 67, 121 S.Ct. 1281, 1290 (2001) (Court quoting Opinion 5.05 regarding confidentiality of patient information); In re Vioxx Products Liability Litigation, 230 F.R.D. 473, 476 n.17 (E.D. La. 2005) (court quoting Principle IV and Opinion 5.05 for physician's duty to keep patient information confidential); Harlan v. Lewis, 141 F.R.D.107, 109 n. 5 (E.D. Ark. 1992) (quoting Opinion 5.05); Ms. B. v. Montgomery County Emerg. Serv., Inc.,799 F. Supp 534, 539 (E.D. PA. 1992) cert. denied 114 S.Ct. 174 (1993) (citing Opinion 5.05 as reflective of legal obligations); Manion v. N.P.W. Med. Ctr. of. N.E. Pa., Inc., 676 F. Supp 585 (M.D. Pa. 1987) (citing an Illinois case which held that Principle VI and Opinions 5.05, 5.06, and 5.07 reflected public policy protecting confidentiality between physicians and their patients).

97. Additional standards that give rise to a similar duty on behalf of a physician include principles of such professional associations of physicians as the American Society of Orthopedic Surgeons. The Principles of Medical Ethics and Professionalism in Orthopaedic

Surgery of the American Academy of Orthopaedic Surgeons and the American Association of Orthopaedic Surgeons, Principle V ("Confidentiality"), states:

> **Confidentiality.** The orthopaedic surgeon should respect the rights of patients, of colleagues, and of other health professionals and must safeguard patient confidences within the constraints of the law.

98. "Medical Professionalism in the New Millennium: A Physician Charter" (May 17, 2012), adopted as the official policy of the American Academy of Orthopaedic Surgeons and the American Association of Orthopaedic Surgeons, states:

> Commitment to patient confidentiality. Earning the trust and confidence of patients requires that appropriate confidentiality safeguards be applied to disclosure of patient information. This commitment extends to discussions with persons acting on a patient's behalf when obtaining the patient's own consent is not feasible. Fulfilling the commitment to confidentiality is more pressing now than ever before, given the widespread use of electronic information systems for compiling patient data and an increasing availability of genetic information. Physicians recognize, however, that their commitment to patient confidentiality must occasionally yield to overriding considerations in the public interest (for example, when patients endanger others).

**4. Common Law Giving Rise to or Evidencing a Duty for Physicians Under Florida Law**

99. A series of Florida cases has held that individuals in Florida have a right to privacy and confidentiality in their personal medical information and records and that physicians and others have a duty to safeguard and protect such information and records.

100. Florida cases that have recognized these rights and duties include, but are not limited to, the following:

a. Florida Dept. of Corr. v. Abril, 969 So. 2d 201 (Fla. 2007);

b. Gracey v. Eaker, 837 So. 2d 348 (Fla. 2002);

c. State v. Johnson, 814 So. 2d 390, 2002 Fla. LEXIS 440 (Fla. 2002);

d. Amente v. Newman, 653 So. 2d 1030, 1995 Fla. LEXIS 566, 66 A.L.R. 5th 793 (Fla. 1995); and

e. McCann v. Foisy, 552 So. 2d 341 (Fla 4th DCA 1989).

## C. Duties Owed to Mr. Torres by Defendant: the Hospital's Duty to Protect the Confidentiality and Privacy of Patient Information under Florida Substantive Law

101. There is an obligation (or duty) on the part of a hospital and any licensed health provider or facility to safeguard and protect the privacy and confidentiality of patient medical information (sometimes referred to as "protected health information" or "PHI").

102. This duty is reflected in laws, regulations, industry standards such as the standards and guidelines of accrediting organizations, and common law, as shown, in part, by the following:

**1. Federal Statutes and Federal Regulations Giving Rise to or Evidencing a Duty for Hospital under Florida Law**

103. Federal statutes and Federal Regulations that place a duty on a hospital such as the VAMC to protect the privacy and confidentiality of patient medical information include those cited above in paragraphs 79 through 90, incorporated herein by reference.

104. Foremost among federal laws and regulations which assure individuals privacy and confidentiality for their medical information is the Privacy Act of 1974, 5 U.S.C. Sect. 552a.

105. Mr. Torres's information was maintained in a federal system of records to which the Privacy Act applies.

106. Additionally, 42 C.F.R. Section 482.24(3), states:

> The hospital must have a procedure for ensuring the confidentiality of patient records. Information from or copies of records may be released only to authorized individuals, and the hospital must ensure that unauthorized individuals cannot gain access to or alter patient records. . . .

107. The Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and its implementing regulations, also apply to hospitals such as VAMC Orlando.

108. The provisions of HIPAA stated in paragraphs 80 through 81 above also apply to facilities such as VAMC Orlando. In addition, HIPAA contains additional standards for patient privacy and confidentiality that apply to healthcare facilities such as VAMC. Section 1177(a)(3) of HIPAA, codified at 42 U.S.C. § 1320d-6(a)(3), makes it an offense if any

healthcare provider (including VAMC Orlando) "discloses individually-identifiable health information to another person. . . ."

109. The HIPAA Privacy Rule is a Federal Regulation, enacted pursuant to HIPAA. The Privacy Rule and its amendments can be found at 45 C.F.R. Part 160 and Subparts A and E of Part 164.

a. The Privacy Rule protects against unauthorized disclosure of all "individually-identifiable health information" held or transmitted by a covered entity in any form or media, whether electronic, paper or oral. The HIPAA Privacy Rule calls this information "protected health information" (or "PHI"). 45 C.F.R. § 160.103.

b. Orlando VAMC and its governing agency, the VA, are "covered entities" pursuant to 45 C.F.R. § 160.103.

c. The HIPAA Privacy Rule is applicable to Orlando VAMC and the VA pursuant to 45 C.F.R. § 160.102.

d. Pursuant to the HIPAA Privacy Rule, a covered entity is required to limit the disclosures and use of PHI to the "minimum necessary." A covered entity must make reasonable efforts to use, disclose, and request only the minimum amount of PHI needed to accomplish the intended purpose of the use, disclosure, or request. A covered entity must develop and implement policies and procedures to reasonably limit uses and disclosures to the minimum necessary. 45 C.F.R. §§ 164.502(a) & (b)(1) and 45 C.F.R. §§ 164.514(d)(3)(i) & (ii).

e. The HIPAA Privacy Rule also requires covered entities to provide training for their employees, volunteers, contractors, medical staff and others whose conduct is under the control of the entity (whether or not they are paid by the entity). A covered entity must train all workforce members on its privacy policies and procedures, as necessary and appropriate for them to carry out their functions. A covered entity must have and apply appropriate sanctions against workforce members who violate its privacy policies and procedures or the Privacy Rule. 45 C.F.R. §§ 160.103, 164.530(b) & 164.530(e).

110. The HIPAA Privacy Rule, a Federal Regulation, prohibits a covered entity from using or disclosing PHI, except as permitted by the Rule. 45 C.F.R. § 164.502(a).

111. This Federal Regulation was enacted to protect patients from the unauthorized disclosure of or use of their protected health information by a covered entity.

112. Mr. Torres is a part of the class that the statute and the regulations seek to protect.

113. Orlando VAMC was required to refrain from unauthorized disclosure or use of protected health information pursuant to the HIPAA Privacy Rule.

114. Orlando VAMC had an obligation under this Federal Regulation to safeguard and protect Mr. Torres's medical information in its possession from improper use.

115. Orlando VAMC disclosed Mr. Torres's protected health information to an unauthorized third party in violation of the HIPAA Privacy Rule, 45 C.F.R. § 164.502(a). Mr. Butler was not involved in the medical care and treatment of Mr. Torres.

116. Orlando VAMC used Mr. Torres's protected health information for an improper and unauthorized reason, that is to terminate his employment with the VA, in violation of the HIPAA Privacy Rule, 45 C.F.R. § 164.502(a).

### 2. State Statutes Giving Rise to or Evidencing a Duty for Hospitals and Health Facilities under Florida Law

117. State statutes that place a duty on hospitals in Florida such as VAMC Orlando to protect the privacy and confidentiality of patient medical information include those cited above in paragraphs 90 through 92 above, incorporated herein by reference.

118. Additionally, Section 395.3025, Florida Statutes, applies to all hospitals in Florida. This statute was enacted to protect patients in Florida hospitals and healthcare facilities from the unauthorized disclosure of their protected health information by a hospital or health facility that treats them.

119. Section 395.3025(4), Florida Statutes, states in relevant part: "Patient records are confidential and must not be disclosed without the consent of the patient or his or her legal representative. . . ."

120. Section 395.3025(7)(a), Florida Statutes, states in relevant part:

> If the content of any record of patient treatment is provided under this section, the recipient, if other than the patient or the patient's representative, may use such information only for the purpose provided and may not further disclose any information to any other person or entity, unless expressly permitted by the written consent of the patient. A general authorization for the release of medical information is not sufficient for this purpose.

> The content of such patient treatment record is confidential . . . .

121. Mr. Torres is part of the class that these statutes seek to protect.

122. Orlando VAMC is a hospital or facility that treats patients in Florida. Therefore, Orlando VAMC must protect sensitive medical information pursuant to Section 395.3025, Florida Statutes.

123. Orlando VAMC had an obligation under Florida law to protect Mr. Torres's information.

124. Orlando VAMC breached that duty when its employee improperly and impermissibly disclosed Mr. Torres's UA drug test results to his work-study supervisor without Mr. Torres's express consent.

### 3. Industry Standards Giving Rise to or Evidencing a Duty for Hospitals under Florida Law

125. Industry standards applicable to hospitals that give rise to a duty in the present case, include those of the American Hospital Association and The Joint Commission.[3]

126. The American Hospital Association's Patient Bill of Rights (1973, rev. Oct. 21, 1992), includes the following rights of patients such as Mr. Torres:

> 5. The patient has the right to every consideration of privacy. Case discussion, consultation, examination, and treatment should be conducted so as to protect each patient's privacy.

[3] The Joint Commission was previously known as the Joint Commission on Accreditation of Healthcare Organizations or "JCAHO," and prior to that the Joint Commission on Accreditation of Hospitals or "JCAH."

> 6. The patient has the right to expect that all communications and records pertaining to his/her care will be treated as confidential by the hospital. . . .

(http://www.patienttalk.info/AHA-Patient_Bill_of_Rights.htm as of July 24, 2014.)

127. The Joint Commission has standards that apply to hospitals and hospital medical records. These include Standards IM 2.10, IM 2.20 and IM 2.01.01, which require organizations to maintain the privacy and confidentiality of patient information and to safeguard it from unauthorized access or release. These Standards of The Joint Commission also constitute industry standards that are considered to apply to all hospitals, including federal facilities.

128. Under these standards, hospitals have a duty to:

a. Use PHI only for purposes identified or as required by law or regulation and not further disclosed without patient authorization.

b. Preserve the privacy and confidentiality of data and information identified as sensitive.

c. Safeguard and protect medical information and other confidential information on patients such as Mr. Torres.

d. Prevent the unauthorized access to and disclosure of medical information and other confidential information on patients such as Mr. Torres.

e. Implement policies, standards and procedures to protect the confidentiality of medical information and other confidential information on patients such as Mr. Torres, including sanctions against those who violate them.

f. Properly train its employees, trainees, volunteers, contractors and medical staff on the foregoing policies, standards and procedures.

g. Properly supervise its employees, trainees, volunteers, and staff to ensure that the employees, trainees, volunteers and staff understand their duties regarding the security and privacy of medical records, medical information and other confidential information on patients such as Mr. Torres.

h. Not release or disclose any protected medical information and other confidential information on patients, especially psychiatric information and records, without the knowledge and specific permission of the patient.

### 4. Common Law Giving Rise to or Evidencing a Duty for Hospitals under Florida Law

129. A series of Florida cases has held that individuals in Florida have a right to privacy and confidentiality in their personal medical information and records and that hospitals and others have a duty to safeguard and protect such information and records. This includes those set forth in Paragraph 100 above.

## D. <u>Tortious Actions by Defendant</u>

130. Orlando VAMC's employee, Dr. Zaborsky, wrongfully disclosed Mr. Torres's sensitive, private, confidential health and medical information to a third party, without his authorization. Orlando VAMC's employee, Mr. Butler wrongfully obtained, received, and used Mr. Torres's sensitive, private, confidential health and medical information to terminate his employment with Orlando VAMC.

131. The third party to whom Dr. Zaborsky disclosed the information, Mr. Butler, was not a health care practitioner or provider and was not involved in the care and treatment of Mr. Torres.

132. The disclosure was made in flagrant disregard of Florida Statutes, Federal Regulations, VA Regulations, the standards of the health care industry, the common law of Florida, and the duties that were owed to Mr. Torres by Defendant under these.

133. Mr. Torres specifically alleges:

a. Orlando VAMC had an affirmative, nondelegable duty to not disclose and to prevent its employees from disclosing Mr. Torres's sensitive, private, confidential information to a third party;

b. Orlando VAMC breached its duty or duties;

c. Mr. Torres suffered injury and loss as a direct result of the breach of the duty or duties by Orlando VAMC; and

d. Orlando VAMC's breach of its duty or duties was the legal and factual cause of Mr. Torres's injury.

134. The invasion of Mr. Torres's personal privacy was acknowledged by Orlando VAMC, as shown by its September 13, 2012, and October 10, 2012, letters. Exhibits "3" and "4."

**WHEREFORE**, Plaintiff requests judgment in his favor and against Defendant for:

A. His actual pecuniary damages, both past and future;

B. Special damages as pleaded in paragraphs 56 through 72 above;

C. Pre-judgment interest on all liquidated amounts; and

D. Any other relief in law or equity as this Court deems just and proper.

## COUNT II

## NEGLIGENCE PER SE

135. This Count is for damages for negligence per se under the Federal Tort Claims Act for negligence , within the jurisdiction of the Court.

136. This Count is pleaded in the alternative and in addition to the other causes of action stated herein.

137. Mr. Torres incorporates for this Count the allegations contained in Paragraphs 1 through 72 and 76 through 134 above as if set forth fully herein.

138. Mr. Torres was not the cause, in part or in whole, of his injury.

139. Orlando VAMC and its employee , Dr. Zaborky, were negligent per se when its she disclosed Mr. Torres's confidential medical information to an unauthorized third party and that information was used to terminate the employment of Mr. Torres and ban him from the premises.

140. Mr. Torres was injured and suffered damages as a direct result of the VA's breaches.

141. The invasion of Mr. Torres's privacy was acknowledged by Orlando VAMC, as shown in its September 13, 2012 and October 10, 2012 letters. Exhibits "3" and "4."

**WHEREFORE**, Plaintiff requests judgment in his favor and against Defendant for:

A. His actual pecuniary damages, both past and future;

B. Special damages as pleaded in paragraphs 56 through 72 above;

C. Pre-judgment interest on all liquidated amounts; and

D. Any other relief in law or equity as this Court deems just and proper.

## COUNT III

## BREACH OF FIDUCIARY DUTY

142. This Count is for damages for breach of fiduciary duty under the Federal Tort Claims Act for negligence, within the jurisdiction of this Court.

143. This Count is pleaded in the alternative and in addition to the other causes of action stated herein.

144. Mr. Torres incorporates for this Count the allegations contained in Paragraphs 1 through 72 and 76 through 134 above as if set forth fully herein.

145. In addition, Orlando VAMC and its employees, agents and staff who treated Mr. Torres, specifically Dr. Zaborsky, acquired a relationship of trust and confidence in assuming his care as a patient, which they accepted. This confidence has been violated by Orlando VAMC and its employee, Dr. Zaborsky.

146. Hospitals and licensed health professionals stand in a confidential or fiduciary relationship with their patients. Orlando VAMC and its employees, agents and staff, including Dr. Zaborsky, had a fiduciary relationship with Mr. Torres. Orlando VAMC, through its employee Dr. Zaborsky, breached that fiduciary duty.

147. Orlando VAMC employee Dr. Zaborsky, as Mr. Torres's treating physician, owed Mr. Torres the following duties and obligations, in addition to others stated herein:

a. A fiduciary duty;

b. A duty of loyalty; and

c. A duty to treat any information and medical records as confidential and to refrain from disclosing such information and records to anyone without Mr. Torres's consent.

148. Orlando VAMC was in a position in which it undertook a duty to act for or give advice for the benefit of Mr. Torres upon matters within the scope of its relationship with Mr. Torres.

149. Orlando VAMC disclosed sensitive, private, confidential health and medical information and records to a third party who was not involved in the care and treatment of Mr. Torres without Mr. Torres's authorization.

150. Mr. Torres specifically alleges:

a. Mr. Torres and Orlando VAMC shared a relationship whereby:

(1) Mr. Torres reposed trust and confidence in Orlando VAMC and its employees, agents and staff, including its physicians; and

(2) Orlando VAMC, through employees, agents and staff, including its physicians, undertook such trust and assumed a duty to advise, counsel and protect Mr. Torres and his personal medical information;

b. Orlando VAMC breached the fiduciary duty that was owed to Mr. Torres; and

c. Mr. Torres suffered damage as a result of the breach of fiduciary duty by Orlando VAMC.

151. The invasion of Mr. Torres's privacy was acknowledged by Orlando VAMC, as shown in its September 13, 2012, and October 10, 2012, letters. Exhibits "3" and "4."

**WHEREFORE**, Plaintiff requests judgment in his favor and against Defendant for:

A. His actual pecuniary damages, both past and future;

B. Special damages as pleaded in paragraphs 56 through 72 above;

C. Pre-judgment interest on all liquidated amounts; and

D. Any other relief in law or equity as this Court deems just and proper.

## COUNT IV

## NEGLIGENT TRAINING OF EMPLOYEES AND AGENTS

152. This Count is for damages for the negligent training of employees and agents under the Federal Tort Claims Act for negligence, within the jurisdiction of this Court.

153. This Count is pleaded in the alternative and in addition to the other causes of action stated herein.

154. Mr. Torres incorporates for this Count the allegations contained in Paragraphs 1 through 72 and 76 through 134 above as if set forth fully herein.

155. Orlando VAMC had a duty to properly train its employees.

156. Orlando VAMC breached this duty by failing to properly train its employees, including Dr. Zaborsky and Mr. Butler.

157. As a result, Dr. Zaborsky wrongfully disclosed Mr. Torres's protected health information, specifically, his UA drug test results, to Mr. Torres's work-study supervisor, who then used it to take adverse action against him.

158. This failure on the part of Orlando VAMC caused the damages set forth herein to Mr. Torres, including, but not limited to financial damages and emotional distress.

**WHEREFORE**, Plaintiff requests judgment in his favor and against Defendant for:

A. His actual pecuniary damages, both past and future;

B. Special damages as pleaded in paragraphs 56 through 72 above;

C. Pre-judgment interest on all liquidated amounts; and

D. Any other relief in law or equity as this Court deems just and proper.

## COUNT V

## NEGLIGENT SUPERVISION OF EMPLOYEES AND AGENTS

159. This count is for damages for negligent supervision of employees and agents under the Federal Tort Claims Act for negligence, within the jurisdiction of this Court.

160. This Count is pleaded in the alternative and in addition to the other causes of action stated herein.

161. Mr. Torres incorporates for this Count the allegations contained in Paragraphs 1 through 72 and 76 through 134 above as if set forth fully herein.

162. Orlando VAMC had a duty to properly supervise its employees.

163. Orlando VAMC breached this duty by failing to properly supervise its employees, including Dr. Zaborsky and Mr. Butler.

164. As a result, Dr. Zaborsky wrongfully disclosed Mr. Torres's protected health information, specifically, his UA drug test results, to Mr. Torres's work-study supervisor, who then used that information to take adverse action against Mr. Torres.

165. This failure on the part of Orlando VAMC caused the damages set forth herein to Mr. Torres including, but not limited to, financial damages and emotional distress.

**WHEREFORE**, Plaintiff requests judgment in his favor and against Defendant for:

A. His actual pecuniary damages, both past and future;

B. Special damages as pleaded in paragraphs 56 through 72 above;

C. Pre-judgment interest on all liquidated amounts; and

D. Any other relief in law or equity as this Court deems just and proper.

## COUNT VI

## VIOLATION OF THE PRIVACY ACT OF 1974

166. This Count is for damages for a violation of the Privacy Act of 1974, specifically, 5 U.S.C. § 552a(g)(1)(D) (the "Privacy Act").

167. This Count is pleaded in the alternative and in addition to the other causes of action stated herein.

168. Mr. Torres incorporates for this Count the allegations contained in Paragraphs 1 through 39, 45, 47, 48, 50 through 53, 56 through 72, 79, 80, 83 through 90, 101, 104, 105, 123, 124, and 130 through 133 above, as if set forth fully herein.

169. Orlando VAMC maintains confidential health records related to Mr. Torres within one or more systems of records protected under the Privacy Act.

170. Orlando VAMC, through its employee Dr. Zaborsky, improperly and illegally disclosed Mr. Torres's private protected health information, specifically UA drug test results, to Mr. Torres's work-study supervisor, in violation of the Privacy Act. VAMC employee Mr. Butler, improperly and illegally obtained, received and used Mr. Torres's private protected health information, to terminate his employment, in violation of the Privacy Act.

171. Orlando VAMC, through its employees Dr. Zaborsky and Mr. Butler, acted intentionally or willfully in violation of Mr. Torres's privacy rights. Their conduct was in flagrant disregard of the privacy rights of Mr. Torres under the Privacy Act.

172. Orlando VAMC knew or should have known that Dr. Zaborsky's and Mr. Butler's actions were improper, unlawful and in violation of the Privacy Act.

173. Mr. Torres's medical information from his VA Medical records were not relevant to his employment with Orlando VAMC.

174. The VA failed to maintain Mr. Torres's records as required by the Privacy Act as necessary to assure fairness in any determination relating to his qualifications, character, rights, opportunities and benefits.

175. Information from Mr. Torres's medical record, which was not relevant to his qualifications for continued employment, was illegally used, in violation of the Privacy Act, to unfairly terminate his employment with Orlando VAMC. This also terminated a number of benefits, rights and opportunities which Mr. Torres had. This was adversely affected Mr. Torres.

176. The VA has failed to reverse, remediate or mitigate the harm done to Mr. Torres.

177. On information and belief, the VA has failed to remedy the situation which caused harm to Mr. Torres.

178. Orlando VAMC violated 5 U.S.C. § 552a(e)(10) by intentionally and willfully failing to establish appropriate administrative, technical and physical safeguards to ensure the security and confidentiality of Mr. Torres's medical records and to protect against any anticipated threats or hazards to its security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to Mr. Torres.

179. As a direct and proximate cause of the intentional and willful violation of the Privacy Act by Orlando VAMC, through its employees Dr. Zaborsky and Mr. Butler, Mr. Torres has suffered an "adverse effect," as defined in 5 U.S.C. § 552a(g)(1)(D), including, but not limited to, direct and indirect injury to Mr. Torres's reputation, embarrassment, humiliation, anxiety, physical upset, emotional upset, mental anguish, and out-of-pocket pecuniary losses, as well as inconvenience and unfairness.

180. The invasion of Mr. Torres's privacy was acknowledged by Orlando VAMC, as shown in its September 13, 2012, and October 10, 2012, letters. Exhibits "3" and "4."

**Entitlement to Minimum Damages, Attorney's Fees and Costs**

181. Mr. Torres has been required to hire an attorney to represent him in this matter.

182. Mr. Torres has retained the undersigned attorney and law firm to represent him.

183. Mr. Torres has incurred attorney's fees and costs associated with this matter as a result.

184. Pursuant to 5 U.S.C. § 552a(g)(4), Mr. Torres is entitled to actual damages or the statutory minimum damages of $1,000.00, plus attorney's fees and costs associated with this matter.

185. Such an award is not discretionary. See OMB Guidelines, 40 Fed. Reg. 28, 948, 29, 970 (July 9, 1975).

**WHEREFORE**, Plaintiff requests judgment in his favor and against Defendant awarding:

A. His actual pecuniary damages under 5 U.S.C. § 552a(g)(4)(A), both past and future;

B. Statutory damages under 5 U.S.C. § 552a(g)(4)(A), in an amount not less than $1,000.00 for each breach;

C. Special damages as pleaded in paragraphs 56 through 72 and 179 above;

D. Mr. Torres's reasonable attorney's fees and costs of this action as provided by 5 U.S.C. § 552a(g)(4)(B);

E. Referral of those Orlando VAMC officials or employees responsible for violating the Privacy Act for criminal prosecution under 5 U.S.C. § 552a(i)(1);

F. Pre-judgment interest on all liquidated amounts; and

G. Any other relief in law or equity as this Court deems just and proper.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff requests judgment in his favor and against Defendant awarding:

A. His actual pecuniary damages, both past and future;

B. Statutory damages under 5 U.S.C. § 552a(g)(4)(A), in an amount not less than $1,000.00 for each breach;

C. Special damages as pleaded in paragraphs 56 through 72 and 179 above;

D. Mr. Torres's reasonable attorney's fees and costs of this action as provided by 5 U.S.C. § 552a(g)(4)(B);

E. Referral of those Orlando VAMC officials or employees responsible for violating the Privacy Act for criminal prosecution under 5 U.S.C. § 552a(i)(1); and

F. Pre-judgment interest on all liquidated amounts; and

G. Any other relief in law or equity as this Court deems just and proper.

**DONE** this 26th day of August 2014.

George F. Indest III

/s/ George F. Indest III

**GEORGE F. INDEST III, J.D., M.P.A., LL.M.**
Florida Bar No.: 382426
Primary e-mail: GIndest@TheHealthLawFirm.com
Secondary e-mail: CourtFilings@TheHealthLawFirm.com

TRIAL COUNSEL/LEAD ATTORNEY
ATTORNEY TO BE NOTICED
**CAROLE C. SCHRIEFER**
Florida Bar No.: 835293
Primary e-mail: CSchriefer@TheHealthLawFirm.com
Secondary e-mail: CourtFilings@TheHealthLawFirm.com
TRIAL COUNSEL/LEAD ATTORNEY
ATTORNEY TO BE NOTICED
**CATHERINE T. HOLLIS**
Florida Bar No.: 91488
Primary e-mail: CHollis@TheHealthLawFirm.com
Secondary e-mail: CourtFilings@TheHealthLawFirm.com
ATTORNEY TO BE NOTICED
**THU PHAM**
Florida Bar No.: 106586
Primary e-mail: TPham@TheHealthLawFirm.com
Secondary e-mail: CourtFilings@TheHealthLawFirm.com
ATTORNEY TO BE NOTICED
**THE HEALTH LAW FIRM**
1101 Douglas Avenue
Altamonte Springs, Florida 32714
Telephone: (407) 331-6620
Telefax: (407) 331-3030
**ATTORNEYS FOR PLAINTIFF**
**PEDRO TORRES-COLON**

Attachments (filed separately):

Index to Exhibits to Complaint

Exhibits to Complaint

GFI/cth
S:\1601-1699\1685\001\410-Pleadings-Final\Torres Complaint-Final.wpd